IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Senior Judge Wiley Y. Daniel**

Civil Action No.  11-cv-03083-WYD

THERESE G. VELASQUEZ,

    Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security Administration,

    Defendant.

**ORDER**

THIS MATTER is before the Court on review of the Commissioner's decision that denied Plaintiff's Application for disability insurance benefits and supplemental security income.  For the reasons stated below, this case is reversed and remanded to the Commissioner for further fact finding.

I.    BACKGROUND

Plaintiff, born on September 23, 1961, protectively filed for disability insurance benefits and supplemental security income in April 2010, alleging disability beginning September 1, 2009.  (Transcript ["Tr."] 80, 88).  The claim was initially denied on September 1, 2010.  (*Id.* 65-69.)  Plaintiff then filed a written request for a hearing.  (*Id.* 70-71.)  She also  signed a "Waiver of Your Right to Personal Appearance Before Administrative Law Judge".  (*Id.* 72.)   As a result, the Administrative Law Judge ["ALJ"] found that Plaintiff "knowingly and voluntarily waived in writing the right to personally appear and testify at a hearing." (*Id.* 31.)

On November 24, 2010, the ALJ issued a written decision finding Plaintiff not disabled under the Social Security Act. (Tr. 31-40.) The ALJ's decision was based on a step two finding that while Plaintiff had medically determinable impairments of diabetes mellitus, diabetic peripheral neuropathy, status-post left wrist fusion with left hip bone graft in 2005-06, and mild cervical degenerative disc disease, these impairments, singly and in combination, were not severe because they had not significantly limited her ability to perform basic work-related activities for 12 consecutive months. (*Id.* 35-39.) The ALJ relied solely on the written record in making his decision. (*Id.* 31.)

The Appeals Council denied Plaintiff's request for review of the ALJ's decision. (Tr. 1-3.) Plaintiff timely requested judicial review, and this appeal followed. Plaintiff alleges that the case should be remanded in order for the ALJ to consider new records from Plaintiff's treatment providers. Plaintiff also asserts that the ALJ (1) did not conduct a proper pain analysis, (2) improperly evaluated her depression, (3) failed to consider her impairments in combination, (4) failed to properly develop evidence of her physical and emotional impairments, and (5) erred in assessing her credibility. Finally, Plaintiff argues that there was not a knowing waiver by her right to a "face-to-face" hearing.

II.   ANALYSIS

   A.   Standard of Review

A Court's review of the determination that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standard and whether the decision is supported by substantial evidence. *Hamilton v. Sec. of Health and Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence is evidence a

reasonable mind would accept as adequate to support a conclusion. *Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990). "It requires more than a scintilla of evidence but less than a preponderance of the evidence." *Gossett v. Bowen*, 862 F.2d 802, 804 (10th Cir. 1988).

"Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

  B. <u>Plaintiff's Arguments for Remand</u>

    1. <u>Whether the Medical Evidence Was Properly Evaluated</u>

Plaintiff argues that the ALJ improperly evaluated her impairment resulting from depression, and that the ALJ and the Appeal Council improperly disregarded the diagnosis and conclusions of Plaintiff's treating psychiatrist Dr. Furmansky. In addition, Plaintiff argues that the ALJ and Appeal Council disregarded the diagnosis and conclusions reached by other doctors, including the opinions of the Denver Health professionals who treated Plaintiff for depression. Plaintiff asserts that this error is particularly egregious in that they disregarded treating physicians retained by her employer's worker's compensation carrier, who evaluated and treated Plaintiff for a period of over three years. I agree with Plaintiff that the ALJ erred in his evaluation and weighing of the medical evidence, as discussed below. This requires a remand of the case to the Commissioner.

I first address the opinions of treating psychiatrist Dr. Furmansky. The ALJ stated that he considered Dr. Furmansky's psychiatric evaluation from April 2006 which diagnosed several mental impairments and measured Plaintiff's "global assessment of functioning

(GAF) at 50." (Tr. 38) (citing Exs. 3F/2, 4F.)[1]  In that evaluation, Dr. Furmansky diagnosed post traumatic stress disorder ("PTSD"), Chronic Adjustment Disorder with Depression and Anxiety, and Chronic Pain Disorder with Psychological Factors and a General Medical Condition.  (Tr. 297.)  Dr. Furmansky also assessed severe problems at Axis IV, noting "multiple problems in diagnosing and treating work injury resulting in left wrist fusion with significant loss of social and occupational functions, loss of career, and financial stress."  (*Id.*)[2]

The ALJ did not state what weight he assigned to Dr. Furmansky's opinion or acknowledge that Dr. Furmansky was a treating psychiatrist.  However, it appears that he rejected Dr. Furmansky's opinions in their entirety, stating:

> The doctor diagnosed several mental impairments.  He did not opine to any specific limitations but he measured the claimant's global assessment of functioning (GAF) at 50.  The record contains no evidence of any mental health treatment since that time and the claimant did not allege any mental health problems in her application for disability (Ex. 6E/2). When the claimant was treated at University of Colorado hospital in April 2010, she denied having any prior psychiatric history (Ex. 2F/12).  Mental status examinations at the hospital during [the] period at issue have shown no abnormalities (See Exs. 2F/16, 2F/17, 2F/27).  The claimant alleged some depression as part of her appeal filed in September, 2007 (Ex. 10E/1).  However, there are no medical findings during the period at issue to establish any limitations.

---

[1] The GAF is a subjective determination based on a scale of 100 to 1 of the clinician's judgment of the individual's overall level of functioning.  *Langley v. Barnhart*, 373 F.3d 1116, 1122 n. 3 (10th Cir. 2004).  A GAF score between 41 and 50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, inability to keep a job). *Lee v. Barnhart*, No. 03-7025, 2004 WL 2810224, at *3 (10th Cir. Dec. 8, 2004) (unpublished) (quoting DSM-IV 34).

[2] In another report from December 2007, Dr. Furmansky noted that Plaintiff had a severe exacerbation of her PTSD, depression and anxiety after another surgery with complications.  (Tr. 300-01.) He noted that as reported in August 2007, Plaintiff re-experienced additional functional losses, became suicidal, and her psychiatric functioning regressed.  (*Id.*)

(Tr. 38.) Based on his analysis, the ALJ found that "[t]here is no medically determinable impairment established since the alleged onset date of disability." (*Id.*)

I find that the ALJ's reasons for rejecting the opinions of Dr. Furmansky are not legitimate. First, the ALJ failed to apply the sequential two-step inquiry required when evaluating the medical opinions of a claimant's treating physician, "each step of which is analytically distinct." *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011).[3] Indeed, he failed to evaluate the medical opinions of any of the treating providers under this standard. Second, the ALJ noted that Dr. Furmansky did not opine to any specific limitations, but ignored the Worksheet he completed in December 2006. In that Worksheet, Dr. Furmansky assessed an 18% overall permanent psychiatric impairment and found mild to moderate permanent mental impairments in activities of daily living such as sleep, social functioning, memory and maintaining attention and concentration, and adaptation to stress–including performing work on schedule and adapting to job performance requirements. (Tr. 305-06.)[4] Third, the ALJ ignored the GAF score of 50 indicating serious problems as well as Dr. Furmansky's finding that Plaintiff had a significant loss of social and occupational functions. *See Groberg v. Astrue*, No. 09-4203, 2011 WL 538870, at *5 (10th Cir. Feb. 17, 2011) (unpublished) (a GAF score of 50 "demonstrates that Groberg's mental impairments were serious and likely to have some effect on his ability to work"); *Simien v. Astrue*, No. 06-5153, 2007 WL 1847205, at *2 (10th Cir. June 28, 2007) (unpublished) (holding that the

---

[3] The record before the ALJ also showed that Dr. Furmansky treated Plaintiff for a longer period than expressed by the ALJ– through March 2008. (Tr. 313.)

[4] The Tenth Circuit has made clear that the existence of a moderate impairment is not the same as no impairment at all. *Haga v. Astrue,* 482 F.3d 1205, 1208 (10th Cir. 2007).

ALJ could not ignore the claimant's GAF scores that ranged from 30 to 50, as the ALJ is "tasked with determining the level of [the claimant's] functioning within the six domains").

While the Commissioner argues that Dr. Furmansky's report was prior to the onset date, this is an improper post-hoc argument. *Carpenter v. Astrue*, 537 F.3d 1264, 1267 (10th Cir. 2008). Moreover, it ignores the fact that the ALJ must still consider such evidence. *Lackey v. Barnhart*, No. 04-7041, 2005 WL 758797, at *4 (10th Cir. April 5, 2005) (unpublished) (citing *Hamlin v. Barnhart*, 365 F.3d 1208, 1223 n. 15 (10th Cir.2004)). Dr. Furmansky's reports and opinions were relevant to the progression of Plaintiff's impairments, particularly since he noted permanent impairments. *Id.* (when "a doctor reports that an impairment is permanent, the fact that the report precedes the designated disability period is of limited practical import"); *Andersen v. Astrue*, No. 05-4305, 2009 WL 886237, at *5 (10th Cir. April 3, 2009) (unpublished).

I also reject the Commissioner's argument that the fact Plaintiff did not allege any mental health conditions in her application for disability was a valid reason for the ALJ to reject Dr. Furmansky's opinion. A physician's statements about Plaintiff's condition or impairments "are specific medical findings"; the ALJ errs in rejecting those opinions in the absence of conflicting evidence. *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994). Indeed," when the ALJ considers an issue that is apparent from the record", in this case the records from Dr. Furmansky regarding Plaintiff's mental impairments, "he has a duty of inquiry and factual development with respect to that issue." *Maes v. Astrue*, 522 F.3d 1093, 1097 (10th Cir. 2008).

The importance of Dr. Furmansky's report and opinions is particularly apparent when the evidence before the Appeals Council is considered. The Council considered additional medical records submitted by Plaintiff's counsel appointed after the ALJ's decision. (Tr. 1-5.) When the Appeals Council considers new and material evidence relating to the period on or before the date of the ALJ's decision and denies review, as here, "the new evidence becomes part of the administrative record to be considered when evaluating the [Commissioner's] decision for substantial evidence. *Chambers v. Barnhart*, 389 F.3d 1139 (10th Cir. 2004). The evidence before the Council supported Dr. Furmansky's findings (*see, e.g.,* Tr. at 33-54–IME of Dr. Moe of April 2006 diagnosing major depressive disorder - moderate in severity and pain disorder associated with psychological factors and general medical condition), and showed that Plaintiff's depression and pain continued throughout the relevant time period, consistent with the diagnoses of Dr. Furmansky that Plaintiff's mental impairments were permanent. (*See* Tr. 244, 577, 586, 596, 618, 626, 628-30, 634, 653, 664, 670, 689, 696, 700-01, 711-12, 714.) Accordingly, the ALJ's finding that there are no medical findings during the period at issue to establish any limitations related to Plaintiff's depression or mental impairments is not supported by substantial evidence.

While the Commissioner argues that the ALJ's citation to "benign mental status examinations during the relevant period" (Def.'s Resp. Br. at 17) provides a basis to affirm the ALJ's findings, I disagree. The fact that Plaintiff may have been oriented or had intact memory/concentration does not provide a basis to reject the medical findings of depression. Further, if the ALJ felt there was insufficient evidence in the record to determine the impact of Plaintiff's depression or other mental impairments during the relevant time period, he

should have contacted Plaintiff's medical providers or ordered a consultative examination as to same. See *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002); *Hawkins v. Chater*, 113 F.3d 1162, 1169 (10th Cir. 1997).

Related to this, the ALJ erred because he did not apply the "special technique" required when, as here, a claimant has a medically determinable mental impairment. *Stokes v. Astrue*, No. 07-5046, 2008 WL 1766788, at *2 (10th Cir. 2008) (unpublished). "Under this technique, the agency is required to rate the degree of a claimant's functional limitations caused by those impairments in the areas of '[a]ctivities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation.'" *Id.* (quoting 20 C.F.R. §§ 404.1520a(d)(1-2), 416.920a(d)(1-2)). "The ALJ then applies those ratings in determining whether the claimant's mental impairments are severe at step two and, if so, whether these severe impairments 'meet[ ] or [are] equivalent in severity to a listed mental disorder' at step three." *Id.* (quotation omitted). The ALJ erred in determining that Plaintiff's mental impairment were not severe without first making the required findings regarding how limited she was in each of the four broad functional areas. *Grotendorst v. Astrue*, No. 09-2132, 2010 WL 1049791, at *4 (March 22, 2010) (unpublished); *see also Cruse v. United States Dep't of Health and Human Servs.*, 49 F.3d 614, 617 (10th Cir. 1995) ("[w]hen there is evidence of a mental impairment. . . the [Commissioner] must follow the procedure for evaluating mental impairments set forth in 20 C.F.R. § 1520a and the Listing of Impairments and document the procedure accordingly").

Finally as to mental impairments, I find that the ALJ erred by relying on the state agency physicians in finding that Plaintiff's mental impairments were not severe, since they

opined only as to her physical impairments. (Tr. 36.) Accordingly, this case must be remanded for a proper assessment of Plaintiff's mental impairments.

I also find that the ALJ erred in finding that Plaintiff's physical impairments are not severe. He relied on the findings of the state agency physicians in making that finding, neither of whom examined Plaintiff. (Tr. 36.) I note as a threshold matter that the Tenth Circuit has indicated that the opinion of an agency physician or psychologist who has never seen the claimant is generally entitled to the least weight of all. *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004).

Also, one of those physicians, Dr. DeBorja, believed that a third party musculoskeletal consultative examination was necessary to clarify an inconsistency between treating physician Dr. Anderson's finding of total disability versus an April 2010 examination which appeared inconsistent with that. (Tr. 51-52.) Without such an examination, he found that the medical evidence was insufficient to assess Plaintiff's musculoskeletal impairment. (*Id.* 52.) There is no evidence that the ALJ, however, actually ordered Plaintiff to attend a consultative examination, despite the fact that he apparently had Plaintiff's correct address. The failure to order a consultative examination appears to be error in light of Dr. DeBorja's opinion and does not provide a basis for the ALJ to rely on that opinion. *See Hawkins*, 113 F.3d at 1169 (an ALJ "should order a consultative exam when evidence in the record establishes the reasonable possibility of the existence of a disability and the result of the consultative exam could reasonably be expected to be of material assistance in resolving the issue of disability).

The ALJ also relied on the findings of state agency physician Dr. Kushner, who opined that Plaintiff's medically determinable impairments were not severe. (Tr. 36.) The ALJ stated that while Dr. Kushner noted evidence of neuropathic complaints, he also noted evidence of a normal neurological examination and gait. (*Id.*) Further, the ALJ found that while Plaintiff has reported visual problems and has diabetes, the medical evidence does not show that these impairments lasted or could be expected to last 12 months or longer. (Tr. 38.) He also found, among other things, that while Plaintiff has reported problems with her feet, there is no evidence that she was treated for this since March 2010. (*Id.*) The ALJ concluded that while there were medical findings to support the establishment of impairments, the record does not show that these have had more than a minimal effect on the claimant's ability to perform basic work activity during the period at issue." (*Id.* 37.)

The ALJ's findings as to Plaintiff's physical impairments are not supported by substantial evidence when the evidence provided both to the ALJ and to the Appeals Council, and which is now part of the record I review, is considered. That evidence substantiates ongoing chronic problems related to physical impairments that lasted well over twelve months. (*See, e.g.*, 251–February 2010 record showing "high risk" diabetes; 244–March 2010 record reporting pain and assessing "paresthesis bilat feet"; 577–February 2011 record documenting vision problems, diabetic neuropathy, chronic neck and back pain and edema; 597-99–emergency room records from April 2011 documenting numbness/tingling, stabbing pressure, pain score 10/10; chronic low back pain and neck pain, "LLE with swelling/pain", "Extreme TTP from foot to middle calf"; "pt crying from pain"; 631–March 2011 record documenting uncontrolled diabetes mellitus ["DM"] with peripheral neuropathy

and vascular complications, onychomycosis; 586–May 2011 record documenting leg pain, DM neuropathy, edema, and depression; 689–June 2010 record documenting DM with neurologic complications, pain secondary to neuropathy and finding "palpable pedal pulses", "pain in palpation of the medial calcaneal tuberosity on the right and left feet"; *see also* 618, 634, 653, 664, 670, 674, 675, 696, 700, 701, 711, 712, 714[5] Given these findings, the Commissioner's argument that the ALJ's decision was reasonable based on the lack of objective medical evidence is without merit.

There is also evidence in the record that shows Plaintiff's impairments have an impact on her ability to work. (Tr. 700–record from May 2010 noting increased pain ambulating; 711–record from May 2010 stating, "Note written for no work until further evaluated due to pt unable to stand or walk for prolonged periods of time"; 714–record from May 2010 noting that Plaintiff cannot walk greater than 30 minutes and states that she can barely sometimes walk a block; 577–February 2011 record from Dr. Gehred noting that Plaintiff's physical conditions "except edema are chronic or lifelong and inference with employability"; 597-99–noting inability to ambulate; 626–April 2011 record noting that the plan was to be get Plaintiff to where she could walk ½ block with 3/10 pain or less, tolerate walking 1 block.) This evidence provides support for treating physician Dr. Anderson's opinion that Plaintiff was permanently and totally disabled due to "Losing vision, nerve damage to feet, ongoing chronic neck and back pain; arthritis in feet and knees; feet

---

[5] Also, severe NPDR and other vision problems were documented at 621, 623, 648, 658, 665, 667, 676-78, 686, and 695.

swelling" (*id.* 536), an opinion the ALJ rejected as he found it was unsupported by the medical evidence. (*Id.* 39.)

In light of the foregoing, I find that the ALJ's decision at step two that Plaintiff's mental and physical impairments are not severe must be reassessed on remand as it is not supported by substantial evidence. *See Lee v. Barnhart*, No. 03-7025, 2004 WL 2810224, at *1 (10th Cir. Dec. 8, 2004) (unpublished) ("'An impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities.". . . .Only 'slight' impairments, imposing only a 'minimal effect on an individual's ability to work' are considered 'not severe.'" *Id.* (quotations omitted). On remand, the ALJ must consider all the evidence now in the record related to Plaintiff's mental and physical impairments, including that provided to the Appeals Council.[6] *See Doyal v. Barnhart*, 331 F.3d 758, 764 (10th Cir. 2003) (requiring the ALJ to consider the opinions of all the medical providers and to provide specific, legitimate reasons if he rejects them). "[I]n addition to discussing the evidence supporting [his] decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects. *Clifton v. Chater*, 72 F.3d 1007, 1010 (10th Cir. 1996). Since I am remanding this case to the Commissioner for the proper weighing of the medical evidence, this will obviously require the ALJ to reweigh the state agency physicians' opinions as well.

Also, in making the disability determination on remand, the ALJ must consider the combined effects of Plaintiff's impairments in making a disability determination. *Campbell*

---

[6] I address separately below the new records provided in this case by Plaintiff's counsel.

*v. Bowen*, 822 F.2d 1518 (10th Cir. 1987). If the ALJ finds severe mental impairments, he should consider whether Plaintiff had the ability to waive the right to a face-to-face hearing.

Finally, I note that part of the reason why the ALJ's decision is not supported by substantial evidence is that he failed to adequately develop the record. Plaintiff was pro se and waived appearance at a hearing. Nevertheless, Plaintiff identified 15 doctors that she had seen as well as a number of hospitals and clinics she had been seen at. (Tr. 315-320.) It appears that the only doctors that the ALJ solicited records from were Dr. Furmansky and Dr. Anderson. However, "[a]n ALJ has the duty to develop the record by obtaining pertinent, available medical records which come to his attention during the course of the hearing." *Carter v. Astrue*, 73 F.3d 1019, 1022 (10th Cir. 1996). The duty to develop the record is heightened when the plaintiff, as here, appears without counsel. *Madrid v. Barnhart*, 447 F.3d 788, 790 (10th Cir. 2006); *see also Dixon v. Heckler,* 811 F.2d 506, 510 (10th Cir.1987) ("The [ALJ's] duty of inquiry takes on special urgency when the claimant has little education and is unrepresented by counsel."). While the ALJ may not have needed to obtain all of the medical records in this case, he had a duty to make sure the record was developed enough to allow him to properly assess the severity of Plaintiff's impairments and the duration of same, particularly since he faulted Plaintiff for not obtaining further treatment as to some of her impairments. (Tr. 38.)

        2.      <u>The ALJ's Credibility Findings</u>

Plaintiff also argues that the ALJ improperly assessed her credibility when he did not inquire as to whether her failure to seek medical assistance was the result of her financial condition. Further, she asserts that the ALJ did not properly assess her pain. I

first address the ALJ's findings that there was evidence of poor compliance with treatment. (Tr. 36, 38-39.) The ALJ concluded on the compliance issue that "[i]f the claimant's symptoms were as severe as she alleges, it is reasonable to believe that she would have followed the advice of her treating medical sources. (*Id.* 39.) I find that the ALJ erred in his analysis.

The Tenth Circuit has stated that "the law requires an ALJ to apply a particular analysis anytime he relies on a failure to pursue treatment as a basis to find that claimant is not disabled." *Fuller v. Astrue*, No. 10-2037-JWL, 2011 WL 209527, at *17 (10th Cir. Jan. 21, 2011) (unpublished) (citing *Ragland v. Shalala*, 992 F.2d 1056, 1060 (10th Cir. 1993)). "Before relying on such a failure to pursue treatment, 'the ALJ should consider (1) whether the treatment at issue would restore claimant's ability to work; (2) whether the treatment was prescribed; (3) whether the treatment was refused; and, if so, (4) whether the refusal was without justifiable excuse.'" *Id.* (quotation and internal quotation marks omitted). This includes an assessment of whether the claimant lacked the financial ability to pursue treatment or medication.

In this case, while the ALJ noted that "[a]t the time of her alleged onset of disability, [Plaintiff] reported to her doctors at the University of Colorado hospital that she had not taken insulin for two years because of a lack of funds" (Tr. 38), he failed to determine whether Plaintiff actually lacked the financial ability to pursue treatment or medication and whether this constituted a justifiable excuse for her failure to comply with treatment. Plaintiff asserts that she had no income after her worker's compensation case was closed, and eventually became a charity patient at Denver Health. (Opening

Brief at 8-9.) She also noted that the medical records of Denver Health state on several occasions that Plaintiff had been unable to procure insulin or medical treatment due to her financial condition. (*Id.* at 9, citing Tr. at 272, 284.) This should be adequately considered by the ALJ on remand, along with the other factors required in the analysis regarding failure to obtain treatment.

As to Plaintiff's pain, I note that this will need to be reevaluated in light of the fact I am remanding this for a new evaluation of the medical evidence in this case, including the new evidence provided to the Appeals Council. Nonetheless, I also note errors in the ALJ's pain assessment. The ALJ stated that the examination findings he referenced in his decision "do not support the claimant's reported severity of back, neck, or wrist pain and resulting limitations." (Tr. 37.) While he found there are "medical findings to support the establishment of impairments", he stated that "the record does not show that these have had more than a minimal effect on the claimant's ability to perform basic work activities during the period at issue." (*Id.*) Accordingly, the ALJ found that Plaintiff "is less than fully credible with respect to her reports of pain and limitation, and their effect on her ability to work". (*Id.* 39.)

As support for his finding, the ALJ noted that Plaintiff's "reported limitations are inconsistent with the medical findings of record, and are not supported by the medical opinion of the State agency physicians, which are given greatest weight." (Tr. 37.) He also found that Plaintiff's complaints "are inconsistent with her evident work activity [at Wendy's] after her alleged onset of disability in September 2009", which he found "presumably involves prolonged sitting or standing." (*Id.*)

Turning to my analysis, I agree with Plaintiff that there appears to be at least a loose nexus between Plaintiff's pain and her musculoskeletal problems and/or diabetes. Accordingly, the ALJ was required to conduct a full pain analysis under *Luna v. Bowen*, 834 F.2d 161 (10th Cir. 1987), considering the appropriate factors and linking his conclusions to the evidence. The ALJ erred by not conducting this analysis or even referencing the factors he was required to consider. Indeed, the record as supplemented by the evidence given to the Appeals Council is replete with findings documenting Plaintiff's pain. The pain is supported by objective findings, and Plaintiff has been prescribed multiple treatments and medications to help with the pain. Moreover, Plaintiff has been diagnosed with a chronic pain disorder. An ALJ errs in not considering "'the possibility that psychological disorders combined with physical problems,'" the diagnosis of a somatoform disorder, and in not treating "plaintiff's somatic preoccupation as a manifestation of h[er] mental impairment or consider how that impairment, along with plaintiff's depression and anxiety, affected h[er] perception of pain." *Winfrey v. Chater*, 92 F.3d 1017, 1021 (10th Cir. 1996) (quotation omitted).[7]

In conclusion, the ALJ must conduct a proper credibility and pain analysis on remand, after properly weighing the medical evidence. In making the credibility assessment, the ALJ should keep in mind that he may not make speculative inferences about what the medical evidence means or second guess the judgment of the medical

---

[7] I also question the ALJ's reliance on Plaintiff's limited work at Wendy's. (*See* Tr. at 33–noting that Plaintiff was paid $2,002 in the fourth quarter of 2009 and $2,437 in the first quarter of 2010). This Court has held that a plaintiff's "persistent attempts to work with her impairment" actually "serve to bolster her credibility." *Tyson v. Apfel*, 107 F. Supp. 2d 1267, (D. Colo. 2000) (citing *Rivera v. Schweiker*, 717 F.2d 719, 725 (2nd Cir. 1983)).

doctors.  *See McGoffin*, 288 F.3d at 1252.  That is because the ALJ's credibility judgments "by themselves 'do not carry the day and override the medical opinion of a treating physician that is supported by the record.'"  *Id.* (quotation omitted); *see also Romero v. Astrue*, No. 06-6305, 2007 WL 2110899, at *2 (10th Cir. 2007) (unpublished) ("Dr. Haddock's conclusions concerning Ms. Romero's pain and limitation. . . find support in the treatment records and therefore could not be cursorily dismissed. . .").

    3. <u>Whether the Case Should Also Be Remanded Based on the New Evidence Provided by Plaintiff's Counsel</u>

Plaintiff has submitted approximately 170 pages of medical records to this Court as attachments to her Opening Brief.  The records provide greater detail concerning Plaintiff's left wrist fusion, related operations, and complaints of anxiety and depression. Plaintiff requests that the case be remanded to the ALJ for consideration of this new allegedly material evidence.  Since I am already remanding the case based on errors in the ALJ's decision (a sentence four remand under 42 U.S.C. § 406(g)), Plaintiff's request for a remand under sentence six of 42 U.S.C. § 405(g) appears to be moot. Nonetheless, I direct the ALJ to consider this new evidence in his reassessment of the medical evidence and Plaintiff's impairments.  I find that the evidence is material and that Plaintiff demonstrated good cause for the failure to incorporate such evidence into the record in a prior proceeding.

Evidence is material and a remand is appropriate "when a reviewing court concludes that 'the [Commissioner's] decision might reasonably have been different had that (new) evidence been before him when his decision was rendered."  *Cagle v.*

*Califano*, 638 F.2d 219, 221 (10th Cir. 1981). While I agree with the Commissioner that the new evidence submitted by Plaintiff concerns medical treatment before the alleged onset of disability in this case, it is relevant to show the progression of Plaintiff's mental and physical impairments. As noted previously, Dr. Moe's opinion regarding Plaintiff's mental impairments provides support for Dr. Furmansky's opinion as to permanent mental impairments (See ECF No. 16-2 at 33-54), as do the later findings of depression and pain in the evidence provided to the Appeals Council. Further, there is evidence documenting the progression of injuries to Plaintiff's wrist from her multiple surgeries and the infection of her left hip, eventually resulting in depression and a chronic pain disorder. Accordingly, it could change the outcome of the ALJ's decision.

Further, I find that Plaintiff has shown good cause for her failure to get this evidence to the Appeals Council since she states that the Appeals Council ruled on the appeal before the expiration of the time period granted pursuant to an extension to supplement the record. While the Appeals Council retracted its initial decision denying review after being advised of this issue and allowed time for additional evidence to be considered, Plaintiff asserts that she was told by representatives of the Appeals Council that the claim had been denied and she could not submit any further medical evidence.

III.   CONCLUSION

Based upon the foregoing, I find that the ALJ did not properly weigh the medical evidence and that errors were made in the credibility assessment. Accordingly, it is

ORDERED that this case is **REVERSED AND REMANDED** to the Commissioner for further fact finding as directed in this Order pursuant to sentence four in 42 U.S.C.

§ 405(g).  Upon remand, the Commissioner shall also consider the new evidence submitted to this Court by Plaintiff in accordance with sentence six of § 406(g).

Dated:  March 21, 2013

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
Senior United States District Judge